UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MONTE HOISINGTON, )
)
Petitioner, ) No. CV-07-332-LRS
)
v. ) **ORDER GRANTING**
) **MOTION TO DISMISS,**
ROBIN WILLIAMS, ) *INTER ALIA*
)
Respondent. )
_____ )

**BEFORE THE COURT** is Respondent's Motion To Dismiss Petitioner's Federal Habeas Petition As Time-Barred Under 28 U.S.C. §2244(d). (Ct. Rec. 16). This motion is heard without oral argument.

Petitioner's Motion For Leave to file an affidavit as a sur-reply to Respondent's Reply on his Motion To Dismiss (Ct. Rec.38) is **GRANTED**. The affidavit (Ct. Rec. 39) has been considered by the court in determining the Motion To Dismiss. Accordingly, what this court has construed as Petitioner's "Motion To Strike" Respondent's Reply (Ct. Rec. 36), is **DENIED**.

**I. BACKGROUND**

Based on a jury finding that he is beyond a reasonable doubt a Sexually Violent Predator (SVP), RCW 71.09.060, the Petitioner is in custody pursuant to an Order of Commitment entered by the Asotin County Superior Court on July 25,

**ORDER GRANTING MOTION
TO DISMISS,** *INTER ALIA***-**        **1**

2001. The Petitioner is civilly committed to the Special Commitment Center (SCC) in Steilacoom, Washington. He is in the custody of the Washington Department of Social and Health Services.

Petitioner appealed his civil commitment to the Washington Court of Appeals, Division III. The court of appeals affirmed the Order of Commitment. *State v. Hoisington*, 123 Wn. App. 138, 94 P.3d 318 (2004). Petitioner then sought review by the Washington Supreme Court. The state supreme court denied review on March 31, 2005. *State v. Hoisington*, 153 Wn.2d 1031, 110 P.3d 756 (2005). The Washington Court of Appeals issued its mandate on May 13, 2005.

Subsequently, on September 29, 2005, Petitioner filed a 28 U.S.C. Section 2254 habeas corpus petition in the U.S. District Court for the Western District of Washington (C05-5642RBL). Following the filing of the Respondent's answer in that matter, the Petitioner filed a motion to dismiss his petition without prejudice to pursue state court remedies. On April 10, 2006, the Western District of Washington dismissed Petitioner's petition without prejudice.

On March 22, 2006, Petitioner filed a *pro se* personal restraint petition with the Washington Court of Appeals, Division III. On October 3, 2006, the court of appeals issued an order dismissing the personal restraint petition. Petitioner sought discretionary review from the state supreme court. On December 26, 2006, the state supreme court denied the motion for discretionary review.

On October 18, 2007, Petitioner filed the 28 U.S.C. Section 2254 petition in the captioned matter.

## II. DISCUSSION

The Aniterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. §2244(d)(1), provides that a one year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. The limitation period runs from the latest of: (A) the

**ORDER GRANTING MOTION
TO DISMISS,** *INTER ALIA*-         **2**

date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the U.S. Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

In this case, there is nothing to indicate that any factor other than the date on which the judgment became final by the conclusion of direct review, or the expiration of the time for seeking such review, should be used to establish the one year limitation period. The period of "direct review" in 28 U.S.C. §2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the U.S. Supreme Court, whether or not the petitioner actually files such a petition. When a petitioner fails to seek a writ of certiorari, the one year limitation period begins to run on the date the 90 day period defined by Supreme Court Rule 13 expires. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).

The order of the state supreme court denying discretionary review on Petitioner's direct appeal was entered on March 31, 2005.[1] Petitioner then had 90 days from that date, or until June 29, 2005, to file a petition for writ of certiorari with the U.S. Supreme Court. The one year limitation period began on June 30,

---

[1] The 90 days runs from the date the state supreme court filed its decision, rather than from the date the court of appeals subsequently issued its mandate. The state supreme court's decision terminated review on direct appeal, not the mandate that was subsequently issued. *Wixom v. Washington*, 264 F.3d 894, 897-98 (9th Cir. 2001).

**ORDER GRANTING MOTION TO DISMISS,** *INTER ALIA*-        3

2005, and ran for a period of 266 days until March 22, 2006, when Petitioner filed his personal restraint petition with the Washington Court of Appeals. This personal restraint petition had the effect of tolling the limitations period. 28 U.S.C. §2244(d)(2). The limitation period remained tolled until December 26, 2006 when the state supreme court denied the Petitioner's motion for discretionary review. On December 27, 2006, the one year limitation period began running anew and ran for 296 days until Petitioner filed the habeas corpus petition in the captioned matter on October 18, 2007. Because a total of 562 days (266 + 296) elapsed from the date the one year limitation period commenced on March 31, 2005, until the date Petitioner filed his habeas corpus petition in the captioned matter on October 18, 2007, said petition is untimely.[2]

### A. Does AEDPA Apply To Civil Commitment Orders?

Petitioner contends the AEDPA and its one year limitation period does not apply to a person who has been civilly committed pursuant to an "order" of a state court because he is not a "person in custody pursuant to the **judgment** of a state court." (Emphasis added). This is a distinction without a difference for federal habeas corpus purposes. Indeed, if Petitioner's argument were accepted, he would not be able to seek habeas corpus relief under Section 2254 because Section 2254(a) uses the identical language as that found in Section 2244(d)(1) in stating that "a district court shall entertain an applicable writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

---

[2] The one year limitation period expired in early April 2007, 99 days after the state supreme court's December 26, 2006 decision denying discretionary review regarding Petitioner's personal restraint petition.

**ORDER GRANTING MOTION
TO DISMISS,** *INTER ALIA* **-        4**

"Custody pursuant to the judgment of a State court" is broader than merely "imprisonment pursuant to a conviction or a sentence of a state court." Furthermore, the language of Section 2254(a) refers to "custody," not to "punishment," and therefore, is available to those who are held in "custody" for treatment reasons, such as convicted sex offenders. As Respondent also notes, §2244(d)(2) refers to "post-conviction **or other collateral review**." (Emphasis added). Petitioner is entitled to seek relief under Section 2254 because he is in the physical custody of the State of Washington pursuant to what is, for all intents and purposes, a state court judgment. As such, he is also subject to the AEDPA's restrictions, including the one year limitation period set forth in Section 2244(d)(1). See *Rose v. Mayberg*, 454 F.3d 958 (9th Cir. 2006) (involving Section 2254 petition filed by a sex offender who had been civilly committed to state hospital as a sexually violent predator).

### B. Should The One Year Limitation Period Be Equitably Tolled In This Case?

The one year statute of limitations is not a jurisdictional bar, and is subject to equitable tolling. *Calderon v. United States Dist. Court*, 163 F.3d 530, 540-41 (9th Cir. 1998). Equitable tolling of the AEDPA limitation period is allowed "only if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Id.* at 541. "When external forces, rather than a petitioner's lack of diligence, account for the failure to timely file a claim, equitable tolling may be appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). The determination of whether equitable tolling is warranted is "highly fact-dependent," and the petitioner "bears the burden of showing that equitable tolling is appropriate." *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005).

Petitioner contends he is entitled to equitable tolling because he did not

**ORDER GRANTING MOTION TO DISMISS,** *INTER ALIA* **-      5**

know, and could not have known, of the one year limitation period prior to this court advising him of the same in its February 8, 2008 order (Ct. Rec. 4) directing him to amend his petition. Petitioner contends the law library resources at the SCC are inadequate and therefore, Petitioner could not have discovered that a one year limitation period pertained to his filing of a Section 2254 petition.

Petitioner was admitted to the SCC on September 5, 2000. From that date to approximately May or June 2004, Petitioner resided within the McNeil Island Correctional Center (MICC) perimeter. In May or June 2004, he relocated to SCC's current stand-alone facility. Between September 2000 and May or June 2004, Petitioner had access to the MICC law library, as well as the assistance of a library clerk. The MICC law library contained copies of statutes relating to AEDPA, and handbooks to assist prisoners with litigation. Petitioner points out that direct review of his state court appeal did not conclude until March 31, 2005, and therefore asserts he would not have had any reason to research federal habeas corpus provisions until after that date.[3] His first §2254 petition was filed in September 2005 in the Western District of Washington.

The SCC stand-alone facility does not have a law library per se. It has a library in which legal materials are housed. According to Becky Denny, Legal Liaison at the SCC, since locating to the current stand-alone facility in mid-2004, SCC has provided legal computers for resident use on each living unit within the institution. Denny says these computers use Westlaw's Premise application to provide access to statutory materials and case law, and that Section 2254 is included in the subscription. According to Denny, the SCC library contains hardcopy version of materials included within SCC's Premise subscription, and

---

[3] Petitioner also claims that during the period he had access to the MICC law library, residents were never specifically informed about the AEDPA. (Declaration of G. Michael Strauss, Attachment 13 to Ct. Rec. 5).

**ORDER GRANTING MOTION
TO DISMISS,** *INTER ALIA* **-        6**

contains hard copy versions of *Prisoner's Self-Help Litigation Manual* and *The Prisoner's Guide To Survival*, both of which include chapters on habeas corpus. (First Declaration of Becky Denny, Ex. 8 to Ct. Rec. 16).

Petitioner claims he was informed that the aforementioned books were not received in the SCC library until November 2, 2007. It is also asserted that on April 28, 2008, Petitioner and another inmate (Daniel Audett) attempted to access 28 U.S.C. Section 2244(d)(1) using the SCC legal computers. In his Affidavit (Attachment A to Ct Rec. 23), Audett says they were unable to access the statute. It is noted, however, that in his March 12, 2008 Affidavit included as part of Attachment 13 to his Amended Petition filed in this court (Attachment 13 to Ct. Rec. 5 at p. 51), Petitioner states that he "looked on the SCC computer in the case law book and found 28 U.S.C. §2244(d)(1) but found only case law for prisoners" and "could not find any case law in which the AEDPA applied to people that were civilly committed as a sexually violent predator." Petitioner also provides an Affidavit from Garth Snively (Attachment B to Ct. Rec. 23), resident librarian at SCC, who asserts there has never been any notification to SCC residents regarding the AEDPA.

In her Second Declaration (Ex. A to Ct. Rec. 35), Becky Denny claims that since at least January 2006, SCC's Premise subscription has included the U.S. Code Annotated, including 28 U.S.C. Sections 2244 and 2254. According to Denny, Premise training classes were offered during July and September 2004, but Petitioner did not elect to attend the training. Denny says SCC also provides manuals for residents explaining how to use the Premise system. Denny asserts that in July 2004, she sent a memorandum to all SCC living units, including Petitioner's living unit, informing all residents that a copy of the *Prisoner's Self-Help Litigation Manual* was available at the staff desk of each living unit within the institution. A copy of the memorandum is appended to her Second Declaration. Denny says that in November 2007, SCC added two more copies of

**ORDER GRANTING MOTION
TO DISMISS,** *INTER ALIA* **-        7**

this publication to its central library collection. This would be consistent with the information Petitioner says he received from the unidentified library clerk informing Petitioner that copies were received on November 2, 2007.

In his Affidavit filed in sur-reply to Becky Denny's Second Declaration (Ct. Rec. 39), Petitioner claims that in September 2008, Denny instructed her I.T. staff to take out and destroy the hard drives on the SCC legal computers because they were corrupted and did not work. Petitioner does not, however, explain how he has any personal knowledge of this. Petitioner disputes the existence of the memo Denny claims she authored in July 2004, noting that Respondent has not provided any check out slips establishing that residents checked out copies of the *Prisoner's Self-Help Litigation Manual* from the living unit staff desks. Petitioner relies on hearsay, however, contending:

> I spoke with SCC staff and most of the Residents at SCC that were at the SCC new facility in 2004. Not one SCC staff or resident has seen this so-called memo dated 2004 constructed by Becky Denny, or the Prisoners['] Self Help Manual that was supposed to be on the units. The SCC staff could not find a policy on how to check out this manual.
>
> I was informed that to check anything out of the Staff desk there had to be a policy.

(Paragraphs 8 and 9 to Ct. Rec. 39).

The one year limitation period for the Petitioner to file his petition for writ of habeas corpus expired in early April 2007. Consequently, events which occurred after that date are of limited, if any, relevance. The AEDPA and its one year limitation period have been in existence since 1996. Petitioner filed his first habeas petition in the Western District of Washington in September 2005. The timeliness of that petition was not at issue and therefore, in its response to the that petition filed February 8, 2006, the State did not specifically discuss the one year limitation period. The State did, however, discuss the AEDPA and how it "placed a new restriction on the power of federal courts to grant writs of habeas corpus to state prisoners." (Ex. B to Ct. Rec. 35 at p. 10, quoting *Williams v. Taylor*, 529

**ORDER GRANTING MOTION TO DISMISS,** *INTER ALIA* -      8

U.S. 362, 399 (2000)). Petitioner contends this did not put him on notice that AEDPA applied to his petition because the cases referred to by the State, and those found by the Petitioner, referred to "prisoners." Petitioner maintains he is not a "prisoner" and was never informed that the AEDPA applied to non-prisoners.

A petitioner's pro se status, ignorance of the law, and lack of representation **during the applicable filing period** do not constitute extraordinary circumstances justifying equitable tolling because such circumstances are not "extraordinary." *Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). As of February 2006, if not sooner, the Petitioner wrongfully assumed the AEDPA did not apply to him because he was not a "prisoner," even though he remained in the custody of the State of Washington and filed a 2254 petition in the Western District of Washington seeking release from that custody. Petitioner wrongfully assumed that he was entitled to the benefits of 2254, which itself was modified by the AEDPA, without being subject to the accompanying one year limitation period imposed by the AEDPA. Petitioner was not entitled to make these assumptions. He was obligated to act with "reasonable diligence" in ascertaining whether he in fact was subject to the AEDPA and its one year limitation period. There is no evidence that between February 2006 and April 2007, the Petitioner tried to do anything to ascertain whether AEDPA applied to him.

A federal habeas petitioner seeking equitable tolling must act with reasonable diligence throughout the period he seeks to toll. *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006). After December 26, 2006, when the state supreme court denied his motion for discretionary review on his personal restraint petition, the Petitioner waited 10 and a half months to file his present federal habeas petition in this district (Eastern District of Washington), whereas he waited a mere 6 months to file his first federal habeas petition in the Western District after the state supreme court had denied his motion for discretionary review regarding his

**ORDER GRANTING MOTION
TO DISMISS,** *INTER ALIA* **-        9**

direct appeal. In his Response Brief, Ct. Rec. 23 at p. 4, Petitioner states he did not even start his present federal habeas petition until October 15, 2007. Under these circumstances, there is no basis for equitable tolling. The Petitioner did not act with "reasonable diligence" between February 2006 and April 2007 and indeed, may have been obligated to act with "reasonable diligence" even prior to February 2006.[4]

### C. Does The Miscarriage Of Justice Exception Apply To A Claim That Is Time-Barred?

Petitioner apparently contends the miscarriage of justice exception should apply to salvage his habeas petition from being time-barred.

This exception has traditionally been employed in the procedural default context. Where a petitioner who has not properly exhausted state court remedies is now barred from returning to state court by a mandatory rule of state procedure, the exhaustion requirement is satisfied but the claim is procedurally barred from federal review. Review of the merits of procedurally defaulted habeas claims will be allowed, however, if a petitioner demonstrates review of the merits of his claims is necessary to prevent a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851 (1995). A fundamental miscarriage of justice occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id*. at 326-27. To satisfy the "fundamental miscarriage of justice" standard, Petitioner must establish it is more

---

[4] Petitioner does not assert a "government impediment," 28 U.S.C. Section 2244(d)(1)(B), should result in the one year limitation period commencing at a later date so as to make his petition timely. In any event, such an assertion would not be persuasive since no impediment existed prior to April 2007 so as to prevent the Petitioner from filing his petition before that time. If there was an impediment, it existed after the one year limitation period expired in April 2007.

**ORDER GRANTING MOTION TO DISMISS,** *INTER ALIA* **-    10**

likely than not that no reasonable juror could have found him guilty of the offenses. *Id*. at 327. A petitioner must present a colorable showing of factual innocence, as opposed to "legal innocence." *Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853 (1993). If a petitioner does not present supplementary post-trial evidence establishing he is factually innocent, he may not avoid the procedural bar to consideration of the merits of his habeas claims. *Schlup*, 513 U.S. at 315. A finding that a petitioner has presented sufficient evidence of his "actual innocence" must be based on "new," reliable evidence not presented at trial. *Id*. at 324-25.

At the outset, it is noted that neither the U.S. Supreme Court or the Ninth Circuit Court of Appeals has decided whether the AEDPA's statute of limitations provision may be overridden by a showing of "actual innocence." *Majoy v. Roe*, 296 F.3d 770, 776-77 (9th Cir. 2002); *Lisker v. Knowles*, 463 F.Supp.2d 1008, 1032 (C.D. Cal. 2006). Assuming *arguendo* that the "fundamental miscarriage of justice" standard ("actual innocence") can be employed to avoid the AEDPA's statute of limitations, this court finds that Petitioner has not met the standard.

As Petitioner notes, the question here is not whether he is actually innocent of a crime. Petitioner does not challenge his convictions for sexually violent offenses committed in 1977, 1978 and 1991. The question is whether at Petitioner's civil commitment trial there was an absence of any credible evidence to support a jury finding that he is a sexually violent predator who would be likely to engage in predatory acts of sexual violence if not confined in a secure facility. Petitioner contends he is "actually ineligible" for civil commitment as a sexually violent predator because of Dr. Doren's false diagnosis and misrepresentation of the scientific evidence. At the civil commitment trial, Dr. Doren testified that Petitioner suffers from a mental abnormality known as "paraphilia" which predisposes him to committing sexual acts against other people. Petitioner asserts that even if he is required to meet the "new" evidence requirement, he has done so

**ORDER GRANTING MOTION**
**TO DISMISS,** *INTER ALIA* **-      11**

because "professional criticism of Dr. Doren[']s theories was not published until after Petitioner[']s [civil commitment] trial in 2001."

This court agrees with Respondent that Petitioner's arguments suggest no more than an ongoing debate within the scientific community regarding how to predict risk among sex offenders. Petitioner's arguments do not meet the high bar of establishing "actual ineligibility" for civil commitment. Numerous courts to this day have upheld commitments based on paraphilia NOS (not otherwise specified), or nonconsent. *In re Detention of Post*, 145 Wn.App. 728, 818 and fn. 18, 187 P.3d 803 (2008). See also *Brock v. Seling*, 390 F.3d 1088, 1091 (9th Cir.2004)(denying 2254 petition finding it sufficient that jury found that petitioner's condition evinced "serious difficulty" in controlling his behavior whether predicated on expert testimony that petitioner suffered from a paraphilia that rendered him unable to control his desire to rape, or testimony suggesting an antisocial personality marked by impulsivity).[5] In *Post*, the State's witness (Dr. Rawlings) testified that while there is controversy over the paraphilia NOS diagnosis, it is generally accepted in the scientific community of those who treat serious sex offenders and those who evaluate sex offenders under the law. 145

---

[5] Substantive due process is satisfied if a finding of dangerousness is linked to the existence of a mental abnormality or personality disorder that makes it seriously difficult for the person with the abnormality or disorder to control his behavior. *Kansas v. Crane*, 534 U.S. 407, 410, 413, 122 S.Ct. 867 (2002). A diagnosis of mental abnormality or personality disorder, when coupled with evidence of prior sexually violent behavior and testimony from mental health experts, which links these to a serious lack of control, is sufficient for a jury to find that a person represents a serious risk of future sexual violence. Proof of "dangerousness" must be coupled with proof of some additional factor, such as mental illness or mental abnormality. *Kansas v. Hendricks*, 521 U.S. 346, 357-58, 117 S.Ct. 2072 (1997). Proof of total or complete lack of control is not required. *Crane*, 534 U.S. at 411. See also *Rose v. Mayberg*, 454 F.3d 958, 965 (9th Cir. 2006)(jury does not have to find complete inability to control conduct).

**ORDER GRANTING MOTION**
**TO DISMISS,** *INTER ALIA* **-        12**

Wn.2d at 818-19. Petitioner cites to no case in which the diagnosis of paraphilia has been held not to satisfy the *Frye* standard.[6] There is no "fundamental miscarriage of justice" in this case.

### III. CONCLUSION

Respondent's Motion To Dismiss (Ct. Rec. 16) is **GRANTED**. Petitioner's Cross-Motion For Summary Judgment (Ct. Rec. 24), which is directed to the merits of his Petition, is **DISMISSED as moot**.

**IT IS SO ORDERED.** The District Executive shall enter judgment, forward copies of this order to Petitioner and to counsel for Respondent, and close the file.

**DATED** this 30th day of October, 2008.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
United States District Judge

---

[6] Washington adheres to the *Frye* "general acceptance" standard for scientific evidence, as opposed to the *Daubert* standard employed in federal courts. *State v. Copeland*, 130 Wn.2d 244, 260, 922 P.2d 1304 (1996).

**ORDER GRANTING MOTION TO DISMISS,** *INTER ALIA* **-    13**